**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

SALLY ANN TRIPOLI,

                           **Plaintiff,**

    vs.                                                6:14-cv-00832
                                                              (MAD)

**CAROLYN W. COLVIN,**
*Acting Commissioner of Social Security*,

                           **Defendant.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**OLINSKY LAW GROUP**                **HOWARD D. OLINSKY, ESQ.**
300 South State Street
Suite 420
Syracuse, New York 13202
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **AMANDA J. LOCKSHIN, AUSA**
Office of Regional General Counsel           **DAVID BROWN, AUSA**
Region II                                            **SUSAN J. REISS, AUSA**
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Sally Ann Tripoli ("Plaintiff") commenced this action on July 10, 2014, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* Dkt. No. 1.

### II. BACKGROUND

Plaintiff's date of birth is February 4, 1960, making Plaintiff forty-nine years old on December 31, 2009, the alleged onset of her disability. *See* Dkt. No. 10, Administrative Transcript ("T."), at 175, 195. Plaintiff completed her formal education in ninth grade, and she explained that her parents did not force her to attend school, so she dropped out. *See id.* at 47. She has not completed any vocational training or obtained an equivalency diploma. *See id.*. At the time of the hearing, Plaintiff was receiving public assistance in the form of medicaid, food stamps, and utility bill assistance. *See id.*. She was also receiving assistance, in the form of money and food, from her former spouse, who was not obligated to support her. *See id.* at 47, 57.

Plaintiff has not engaged in any work activity since March 2009, when she worked as an elderly companion. *See id.* at 44. She had worked in that capacity from 2001 through 2009. *See id.* at 200. She did not have any other relevant prior work history. *See id.* In that position, Plaintiff would take care of elderly clients in their home, which included providing assistance with their bathing, administering medications, and cooking for them. *See id.* at 208. She was required to walk, stand, stoop, kneel, crouch, reach, and handle large objects for most of her work days. *See id.* at 201, 208. She explained that she stopped work after her father passed away because she was too upset to return to her position. *See id.* She also explained that there was no longer a position available for her. *See id.* She claims that the severity of her medical conditions became disabling on December 31, 2009. *See id.* at 199.

Plaintiff's daily life starts at six o'clock in the morning. *See id.* at 55. She slowly rises from bed and takes her medications. *See id.* Plaintiff claims to suffer from a compulsion to pluck the hair from her face, which she does daily for approximately two hours. *See id.* at 55, 64. Plaintiff also suffers from a fear of being in the shower, which causes her to have panic attacks

every day. *See id.* at 54-55, 65, 218. Despite these difficulties, Plaintiff is able to prepare meat, vegetables, and pasta for her meals on a daily basis. *See id.* at 219. Plaintiff does not have any problems with dressing herself, taking her medication, or taking care of her personal hygiene. *See id.* at 49, 218-19. Plaintiff is able to live alone, *see id.* at 45, and she is able to accomplish the cooking, cleaning, and laundry without assistance, *see id.* at 220. Plaintiff is a licensed driver, and she is able to drive a car and take public transportation when she goes out. *See id.* She is able to travel alone, and she is able to go shopping in stores for food and personal items once a week. *See id.* at 220-21.

In addition, Plaintiff is able to pay her bills, count change, and handle a saving account. *See id.* at 221. She describes that she does not have any interest in hobbies, but she does listen to the radio. *See id.* at 56. Plaintiff also talks on the phone and visits with her grandchildren, who live across the street. *See id.* at 58, 222. She visits with her grandchildren weekly, and she occasionally babysits them. *See id.* at 58, 222. Plaintiff is able to travel and had recently taken a vacation to Florida. *See id.* at 58. Plaintiff was able to travel by plane successfully. *See id.* After finishing dinner, Plaintiff is exhausted and usually goes to bed at seven in the evening. *See id.* at 56. According to Plaintiff, the longest period of time she sleeps during the night is about three hours, but she is up frequently throughout the night. *See id.* at 57. Plaintiff states that she has trouble interacting with other people, but she is able to follow spoken and written instructions. *See id.* at 224. Also, Plaintiff is able to get along with bosses and other people in authority, and she has not ever lost a job due to her interaction with other people. *See id.* Plaintiff also claims that she has trouble remembering things, but she is able to complete tasks such as chores and reading. *See id.* at 224-25.

On the disability report, Plaintiff claims that her disabling conditions include depression, anxiety, diabetes, Barrett's esophagus, acid reflux, arthritis, high blood pressure, and high cholesterol. *See id.* at 199. At the hearing, Plaintiff testified that she is not able to work because she is sick all the time. *See id.* at 45. She claims to be unable to lift objects or to climb stairs, and her abilities to stand, walk, and sit are limited to short periods of time. *See id.* at 223-24. When asked about her pain, Plaintiff responded that she has been in pain for fifteen years and treats it with medications. *See id.* at 225. Plaintiff has not had any testing performed related to her pain despite describing it as sharp, stabbing, and aching all the time. *See id.* at 225-26. Plaintiff claims to have pain all of the time in her arms, hands, feet, knees, legs, and back, and the pain radiates all over her body. *See id.* at 226. She describes that the pain has become stronger since it first started. *See id.*

Plaintiff stated that her panic attacks are triggered by being around people, and, at the hearing, Plaintiff described that being in the shower triggers her panic attacks. *See id.* at 54-55, 228. During an attack, Plaintiff describes that she feels fear, anger, and confusion, but she is able to take medication that alleviates these symptoms within ten to fifteen minutes. *See id.* at 51-52, 228.

On December 13, 2011, Plaintiff protectively filed applications for a period of disability, DIB and SSI. *See id.* at 173-85. These applications were initially disapproved in a notice dated March 28, 2012. *See id.* at 82-89. Plaintiff requested a hearing by an administrative law judge, *see id.* at 116-17, and a video-conference hearing was conducted on January 23, 2013 by Administrative Law Judge David J. Begley (the "ALJ"). The ALJ issued an unfavorable decision to Plaintiff on March 22, 2013. *See id.* at 16-35.

The ALJ made the following determinations: (1) Plaintiff met the insured status requirements of the Social Security Act through March 31, 2014; (2) Plaintiff has not engaged in substantial gainful activity since December 31, 2009, the alleged onset date of disability; (3) Plaintiff's severe impairments include Barrett's esophagus, diabetes mellitus, bilateral knee osteoarthritis, obesity, depression, anxiety, and dependent personality disorder; (4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "listed impairments"); (5) Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b); 416.967(b) with specific limitations, and she can perform simple, routine and repetitive tasks with specific limitations; (6) Plaintiff is unable to perform any past relevant work; and (7) considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *See id.* at 19-30. Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from December 31, 2009 through the date of the ALJ's decision. *See id.* at 31.

Plaintiff timely filed a request for a review of the ALJ's decision with the Appeals Council, *see id.* at 12-13, and, in a notice dated May 6, 2014, the request was denied rendering the ALJ's decision the Commissioner's final decision, *see id.* at 6-11. Plaintiff then commenced this action for judicial review of the denial of her claims by the filing of a complaint on July 10, 2014. *See* Dkt. No. 1. Both parties have moved for judgment on the pleadings. *See* Dkt. Nos. 13, 18. The Court orders that the Commissioner's decision is affirmed.

### III. DISCUSSION

**A. Standard of Review**

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). The Court must examine the administrative transcript to determine whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence." *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir. 1987)). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations and quotation marks omitted).

If supported by substantial evidence, the Commissioner's factual determinations are conclusive, and the court is not permitted to substitute its analysis of the evidence. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) (stating that the court "would be derelict in our duties if we simply paid lip service to this rule, while shaping [the court's] holding to conform to our own interpretation of the evidence"). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Analysis**

   *1. Disability analysis*

For purposes of both DIB and SSI, a person is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is a sequential, five-step analysis for evaluating these disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience. . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)). After the third step, the ALJ assesses relevant medical evidence and other evidence and then determines the plaintiff's RFC, which is then used in steps four and five. *See* 20 C.F.R. § 404.1520 (a)(4), (e). The plaintiff bears the burden on steps one through four, and then the Commissioner has the burden on the final step "of proving that the claimant still retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa*, 168 F.3d at 77 (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986) (internal quotation marks omitted).

### *2. Treating Physician Rule*

At the fourth step in the analysis, the ALJ determines a plaintiff's RFC, which is what a plaintiff can still do despite his or her limitations. *See* SSR 96-8P, 1996 WL 374184, *2 (July 2, 1996). The "RFC is an administrative assessment of the extent to which an individual's medically determinable impairments(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* The assessment takes into consideration the limiting effects of all of a plaintiff's impairments, severe and non-severe, and the determination sets forth the most a plaintiff can do. *See* 20 C.F.R. § 404.1545(a)(1), (e).

Plaintiff contends that the RFC, as determined by the ALJ, is not supported by substantial evidence because the ALJ did not assign controlling weight to Plaintiff's treating medical providers, Dr. David Stang, a licensed psychologist, and Dr. Aimee C. Pearce, M.D. *See* Dkt. No. 13 at 17-22. Dr. Stang's and Dr. Pearce's medical opinions about the severity of Plaintiff's impairments and symptoms can be entitled to "controlling weight" when the opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also* 20 C.F.R. § 404.1527(a)(2); *Martin v. Astrue*, 337 Fed. Appx. 87, 89 (2d Cir. 2009) ("Although the final responsibility for deciding issues relating to disability is reserved to the Commissioner, an ALJ must give controlling weight to a treating physician's opinion on the nature and severity of the [plaintiff's] impairment when the opinion is well-supported by medical findings and not inconsistent with other substantial evidence.") (citations omitted); *Williams v. Comm'r of Soc. Sec.*, 236 Fed. Appx. 641, 643-44 (2d Cir. 2007) (noting that inconsistent evidence can be in the form of opinions of other medical experts).

8

An ALJ may also refuse to consider the treating physician's opinion, but there must be a stated good reason for doing so. *See Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011). When an ALJ refuses to assign controlling weight to a treating physician's opinion, he or she must consider a number of factors to determine the appropriate weight to assign, including: (1) the frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the treating physician's opinion; (3) the consistency of the opinion with the record as a whole; (4) whether the opinion is from a specialist; and (5) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted).

A treating physician's opinion can be contradicted by other substantial evidence, such as opinions of other medical experts. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). The less consistent an opinion is with the record as a whole, the less weight it is to be given. *Otts v. Comm'r of Soc. Sec.*, 249 Fed. Appx. 887, 889 (2d Cir. 2007).

### a. Dr. David Stang

The ALJ identified Dr. Stang as Plaintiff's treating psychologist and noted the relationship began in July 2012. *See* T. at 27. While the ALJ did not specifically state the frequency of the visits, the ALJ references his review of Dr. Stang's treatment records. *See id.* at 27-29. The decision includes a summary of the treatment records discussing Plaintiff's anxiety symptoms as well as other mental health conditions. *See id.* Specifically, the ALJ summarizes that Dr. Stang's records demonstrate a high anxiety mood but also goal-directed thought processes, full and alert

orientation, and intact memory and judgment. *See id.* The ALJ also notes that Dr. Stang's treatment records show Plaintiff has mild deficits in concentration, dependency issues with men, and unhealthy relationships. *See id.*

Dr. Stang completed a medical source statement, identifying Plaintiff's mental conditions as (1) moderate, recurrent major depressive disorder, (2) generalized anxiety disorder, and (3) dependent personality disorder. *See id.* at 472. Dr. Stang found that Plaintiff does not have the useful abilities to (1) complete a normal workday and work week without interruptions from psychologically based symptoms, (2) deal with normal work stress, or (3) interact appropriately with the general public. *See id.* at 473. He found that Plaintiff is unable to meet competitive standards in remembering work-like procedures, maintaining attention for two hour segments, sustaining an ordinary routine without special supervision, working in coordination with or in proximity to others without being unduly distracted, making simple work-related decisions, accepting instructions and responding appropriately to criticism from supervisors, maintaining socially appropriate behavior, traveling in unfamiliar places, and using public transportation. *See id.* Finally, Dr. Stang found that Plaintiff's abilities seriously limit but do not preclude her from understanding and remembering very short and simple instructions, carrying out very short and simple instructions, maintaining regular attendance and being punctual within customary, usually strict tolerances, performing at a consistent pace without an unreasonable number and length of rest periods, asking simple questions or requesting assistance, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, being aware of normal hazards and taking appropriate precautions, and adhering to basic standards of neatness and cleanliness. *See id.*

The ALJ found that Dr. Stang's opinion of Plaintiff's limitations far exceed the limitations that are supported by his treatment notes and the other evidence in the record, including Plaintiff's unremarkable consultive examination and report. *See id.* at 29. The Court has reviewed the medical evidence of Plaintiff's mental conditions and finds that substantial evidence supports the ALJ's determination to assign less than controlling weight to Dr. Stang's medical source statement. Dr. Stang's treatment records demonstrate that Plaintiff does suffer from anxiety and depression, but there is no support for daily obsessions related to picking at her skin or other daily obsessions. *See id.* at 468-83. Further, the record indicates significant anxiety related to her social security case and being alone, but there is not support for daily or even frequent panic attacks. *See id.* There is a notation that she had one panic attack in an airport but that she was able to overcome the anxiety and continue with her travel plans. *See id.* at 470. Plaintiff also experienced panic attacks about her social security hearing. *See id.* at 468.

Dr. Stang's evaluation of Plaintiff in his treatment records indicated that Plaintiff "often babysits her grandchildren." *See id.* at 478. He found that her motor activity and speech are normal, her thought process is goal directed, and her concentration has only mild deficits. *See id.* at 478. Dr. Stang placed Plaintiff's attention level at alert and evaluated her memory, judgment, and insight as intact. *See id.* at 479. Dr. Stang found Plaintiff to be fully oriented, and she did not suffer from any perceptual abnormalities. *See id.*

The Court also finds that there is substantial evidence to support the ALJ's determination that Dr. Stang's medical source statement is inconsistent with other evidence in the record. Dr. Minhaj Siddiqi, M.D., Plaintiff's treating psychiatrist, completed a mental status evaluation, which indicates that Plaintiff's had an appropriate affect, intact thought process, intact memory, intact concentration, age-appropriate abstract thinking, intact judgment, and intact insight. *See id.*

11

at 305. In July, August, and September 2011, Plaintiff reported to Dr. Siddiqi that she was doing well, and her anxiety symptoms were in good control. *See id.* at 310-13. She also reports that she was doing "ok" in October and November 2011, and February 2012. *See id.* at 314-15, 464. In December 2011, Plaintiff had anxiety over her sister's health but reported that the Valium helps her anxiety. *See id.* at 315.

In April and July 2012, Plaintiff reported doing well with her anxiety symptoms under good control, and, in August 2012, Plaintiff reported that her anxiety was less. *See id.* at 461-63. Plaintiff reported that she felt "somewhat depressed" in September 2012, but she also reported that her anxiety was manageable with Valium. *See id.* at 460. By October 2012, Plaintiff reported feeling better and that her anxiety related symptoms were in good control, and the following month, Plaintiff reported that her anxiety was "okay and manageable." *See id.* at 458-59. In January 2013, Plaintiff felt that her anxiety and stress level increased because the time of year reminded her of her parents who passed away. *See id.* at 357. These treatment records are not consistent with the limitations imposed by Dr. Stang's medical source statement.

The ALJ also cites the psychiatric examination performed by Dennis M. Noia, an examining psychologist, as evidence that is inconsistent with Dr. Stang's medical source statement. *See id.* at 27, 29. The ALJ accurately states that Dr. Noia found that Plaintiff is capable of understanding and following simple instructions, performing simple tasks, performing some complex tasks independently and with supervision, maintaining attention and concentration, attending to a routine, making appropriate decisions, and interacting moderately well with others. *See id.* at 29, 34-50. The ALJ accounted for Dr. Noia's finding that Plaintiff has difficulty dealing with stress in the RFC by limiting her to simple tasks, simple decision making, few changes, and superficial interactions. *See id.* at 29, 350.

### *b. Dr. Aimee C. Pearce, M.D.*

Dr. Pearce completed a medical source statement on February 27, 2013, and she stated that Plaintiff suffers from Barrett's esophagus, anxiety, and bilateral knee osteoarthritis, assessing Plaintiff's prognosis as fair. *See id.* at 489-91. Dr. Pearce found Plaintiff to suffer from severe debilitating anxiety, chronic abdominal pain, nausea, and pain with ambulation. *See id.* It was Dr. Pearce's opinion that Plaintiff could sit for thirty minutes at one time and at least six hours in an eight-hour work day. *See id.* She also found that Plaintiff could stand for ten minutes at one time and could stand for less than two hours in an eight-hour work day. *See id.* Dr. Pearce found that Plaintiff could occasionally lift and carry less than ten pounds, rarely lift and carry ten pounds, and never lift or carry twenty pounds or more. *See id.* According to Dr. Pearce's medical source statement, Plaintiff could occasionally twist, stoop/bend, and climb stairs, but she could never crouch or climb ladders. *See id.* Dr. Pearce did not place limits on Plaintiff's ability to move her head and neck or to use her hands, fingers, and arms. *See id.* As a result of Plaintiff's anxiety, Dr. Pearce opined that Plaintiff would be absent from work four days per month. *See id.* Also, Plaintiff would be off-task more than twenty percent of the time and would need to take fifteen-minute breaks two or three times per work day. *See id.*

The ALJ noted that Dr. Pearce has been Plaintiff's treating primary care provider since 2009. The ALJ accounted for Plaintiff's bilateral knee osteoarthritis in the RFC by limiting Plaintiff to no more than light exertion, and he also took into account Plaintiff's obesity, Barrett's esophagus, and type II diabetes mellitus in his RFC determination based on Dr. Pearce's medical records. *See id.* at 25-26. The ALJ found that Plaintiff's treatment records from Dr. Pearce do not support the alleged limitations with standing and walking in the medical source statement. *See id.* at 26. In support of his conclusion, the ALJ cites that there is no evidence that Plaintiff required

13

an assistive device, or was ever prescribed a device, for ambulation. *See id.* Also, Plaintiff's knee pain is the result of injuries sustained prior to her relevant work history without any evidence that the knee pain has worsened since that time, and Plaintiff was able to work with the injuries. *See id.* The ALJ also notes that Dr. Pearce has only provided conservative treatment for these injuries. *See id.*

The ALJ found that Plaintiff's reported activities of doing light housekeeping, shopping, and driving are also inconsistent with the limitations of the medical source statement. *See id.* at 29. In the record, the Court finds support that Plaintiff stated that she is able to accomplish the cooking, cleaning, and laundry without assistance. *See id.* at 220. Plaintiff is a licensed driver, and she is able to drive a car and take public transportation when she goes out. *See id.* She is able to travel out alone, and she is able to go shopping in stores for food and personal items once a week. *See id.* at 220-21.

The consultation physician, Dr. Pamela Tabb, M.D., recorded that Plaintiff has a normal gait and is able to walk on her heels and toes without difficulty. *See id.* at 353. During her examination, Plaintiff could perform a full squat, had a normal stance, did not use any assistive devices, did not appear to be in any acute distress, and did not need help changing or getting on and off the examination table. *See id.* Plaintiff also reported to Dr. Tabb that she is able to cook, shop, socialize and complete laundry. *See id.* Plaintiff also reported to Dr. Stang that she often babysits her grandchildren, who live across the street. *See id.* at 478.

"An ALJ does not have to explicitly walk through [the regulatory] factors, so long as the Court can conclude that the ALJ applied the substance of the treating physician rule . . . and provide[d] good reasons for the weight she [or he] gives to the treating source's opinion." *Wells v. Colvin*, 87 F. Supp. 3d 421, 434 (W.D.N.Y. 2015) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32

(2d Cir. 2004) (internal quotation and citations omitted). In *Halloran*, the Second Circuit found that controlling weight was appropriately not given to a treating physician's opinions that "were not particularly informative and were not consistent with those of several other medical experts." *See id.*

Here, the ALJ identified substantial evidence showing that the medical source statements provided by Dr. Stang and Dr. Pearce were not consistent with their respective treatment records. In addition, the ALJ identified other medical evidence from consulting physicians and Plaintiff's statements that were inconsistent with the limitations stated by Dr. Stang and Dr. Pearce. The Court finds that the ALJ properly identified Dr. Stang as a specialist in psychology and as Plaintiff's treating psychologist. *See* T. at 27. The ALJ also identified Dr. Pearce as Plaintiff's treating primary care physician since 2009. *See id.* at 29. The ALJ's decision reflects that, after the ALJ reviewed the medical evidence for the frequency of the examination and the length, nature and extent of the treatment relationships, he properly set forth the evidence that was consistent and inconsistent with Dr. Stang's and Dr. Pearce's opinions respectively. *See id.* at 25-29.

The Court finds that the ALJ properly applied the treating physician rule in his analysis and set forth his basis for not giving controlling weight to the medical source statements completed by Dr. Stang and Dr. Pearce. The ALJ was clear that he did not give controlling weight to these two medical source statements because the statements were inconsistent with the treatment records, the consultative evidence, and Plaintiff's statements about her abilities and activities in the record. Accordingly, the Court finds that the ALJ did not commit any legal error in discounting the weight given to Dr. Stang's and Dr. Pearce's medical source statements.

   *3. Credibility*

15

Plaintiff contends that the ALJ failed to evaluate her credibility in conformance with SSR 96-7P, 1996 WL 374186 (July 2, 1996). *See* Dkt. No. 13 at 22-24. Specifically, Plaintiff claims that SSR 96-7P requires an ALJ to take into consideration any observations made by the Administration's employees during the interviews. *See* Dkt. No. 13 at 21. Plaintiff also argues that the ALJ's credibility findings are not supported by substantial evidence because he engaged in a selective evaluation of the record. *See id.* at 22-24.

An ALJ assesses a plaintiff's subjective symptoms using a two-step process. *See* 20 C.F.R. §§ 404.1529(c)(1), 404.1545(a)(3), (e); SSR 96-7P, 1996 WL 374186, at *1. At the first step, the ALJ must determine whether a plaintiff has an underlying impairment that is established by acceptable clinical diagnostic techniques and could reasonably cause a plaintiff's symptoms. *See* SSR 96-7P, 1996 WL 374186, at *2. If an impairment is shown, the ALJ "must evaluate the intensity, persistence, and limiting effects of the [plaintiff's] symptoms to determine the extent to which the symptoms limit the [plaintiff's] ability to do basic work activities." *See id.* at *2. "When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements considering the details of the case record as a whole." *Wells*, 2015 WL 770046, at *9; *see also Snell*, 177 F.3d at 135.

The entire case record includes a plaintiff's history, laboratory findings, a plaintiff's statements about symptoms, statements and information provided by treating and non-treating physicians, and statements from other people that describe how the symptoms affect a plaintiff. *See* 20 C.F.R. §§ 404.1529(c)(1), 404.1545(a)(3), (e); SSR 96-7P, 1996 WL 374186, at *1. Factors that are relevant to a plaintiff's symptoms include (1) the plaintiff's daily activities, (2) location, duration, frequency, and intensity of symptoms, (3) precipitating and aggravating factors, (4) medications and their side effects, (5) treatment received, (6) measures used to

16

alleviate symptoms, (7) and other factors concerning functional limitations and restrictions due the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii). The ALJ found that Plaintiff had an underlying, medically determinable impairment that could reasonably be expected to produce Plaintiff's alleged symptoms. *See* T. at 25. However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not fully credible. *See id.*

Plaintiff relies on SSR 96-7P for the proposition that the ALJ "must consider any observations about the individual recorded by SSA employees during interviews" when evaluating credibility. *See* Dkt. No. 13 at 23. However, this Social Security Ruling states, in part, that a strong indicator of credibility is the consistency of an individual's statements with their medical symptoms, their own statements, and other information in the case record. *See* SSR 96-7P, 1996 WL 374186, at *5-6. Other information can include observations recorded by the Administration's employees during interviews. *See id.* at *6. There is not a regulatory requirement, as contended by Plaintiff, that the ALJ explicitly state the observations made by the Administration's interview in the credibility analysis. *See id.* Accordingly, the Court finds that there was not a legal error in the ALJ's credibility analysis.

Further, the ALJ considered medical evidence and observations concerning Plaintiff's depression and anxiety when he analyzed Plaintiff's credibility. *See* T. at 24-29. In this case, the Administration's interviewer filled in the questionnaire to indicate that Plaintiff had trouble with understanding, coherency, concentrating, talking, and answering. *See id.* at 196. The interviewer explained that Plaintiff responded very slowly and cried during the interview. *See id.* Although, the ALJ did not specifically reference this observation in his decision, the ALJ evaluated these

specific symptoms in his credibility analysis, evaluating the consistency of Plaintiff's statements and the medical symptoms observed and reported in the medical records. *See id.* at 24-29.

Plaintiff is correct that an ALJ is not permitted to selectively rely on evidence, failing to consider the whole record. *See Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 78-79 (N.D.N.Y. 2005); *Riechl v. Barnhart*, No. 02-CV-6169, 2003 WL 21730126, *12 (W.D.N.Y. June 3, 2003). However, the ALJ is also not required to "mention or discuss every single piece of evidence in the record." *Barringer*, 358 F. Supp. 2d at 78 (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). Here, the ALJ's failure to specifically note the observations made by the Administration's interviewer does not indicate that he selectively relied on evidence in the record to find Plaintiff not disabled. To the contrary, the ALJ took into consideration evidence of Plaintiff's previous statements about her ability to perform light housekeeping, her social interactions that have allowed her to engage in two romantic relationships, and her travel to Florida. *See* T. at 27. The ALJ also discussed Plaintiff's ability to drive alone to the hearing and consultative examinations despite her testimony that she is not able to go anywhere alone. *See id.* In his decision, the ALJ reviewed the evidence that was both favorable and unfavorable to Plaintiff's claims of disability that he relied on in finding that Plaintiff was not entirely credible. The Court finds, after review of the record, that the ALJ did not rely on select evidence separate from the record as a whole. Instead, it is clear the ALJ engaged in a comprehensive review of the whole record and that substantial evidence supports his credibility findings.

### *4. Step Five*

At step five of the social security disability analysis, the ALJ found that – considering Plaintiff's age, education, work experience, and RFC – jobs that Plaintiff can perform exist in significant numbers in the national economy. *See id.* at 30. The ALJ's findings were based on the

18

vocational expert's testimony that jobs, as a tagger and remnant sorter, are available for a person of Plaintiff's age, education, work experience, and RFC. *See id.* at 30, 66-67. Plaintiff argues that this determination is not supported by substantial evidence because the vocational testimony was based on the RFC, which did not properly take into account the medical source statements of Dr. Stang and Dr. Pearce. *See* Dkt. No. 13 at 24-25. As discussed above, the Court finds that the ALJ properly applied the treating physician rule to the opinions of Dr. Stang and Dr. Pearce. Accordingly, Plaintiff's contention that the vocational expert's testimony is not supported by substantial evidence is not meritorious. *See Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 319 (W.D.N.Y. 2013) (citing *Wavercak v. Astrue*, 420 Fed. Appx. 91, 95 (2d Cir. 2011).

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and, for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's decision denying disability benefits is **AFFIRMED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED**

Dated: February 22, 2016
      Albany, New York

Mae A. D'Agostino
U.S. District Judge